Richard GARCIA et al., Plaintiffs,

and

United States of America,
Plaintiff-Intervenor,

v.

UVALDE COUNTY et al., Defendants,

and

Norment Foley and Gene Ilse,
Defendants-Intervenors.

Civ.A.No. DR–76–CA–24.

United States District Court,
W. D. Texas,
Del Rio Division.

April 20, 1978.

Reconsideration Denied June 17, 1978.

Paul D. Rich, Crystal City, Tex., George J. Korbel, San Antonio, Tex., Vilma Martinez, Morris J. Baller and Linda Hanten, Mexican American Legal Defense & Educational Fund, San Francisco, Cal., Joaquin G. Avila, Mexican American Legal Defense & Education Fund, San Antonio, Tex., Pablo Avila, Crystal City, Tex., for plaintiffs.

Harvey B. Knudsen, Jr., U. S. Dept. of Justice, Washington, D. C., for plaintiff-intervenor, United States of America.

R. Emmet Harris, Uvalde, Tex., and Grant Cook, Houston, Tex., for defendants.

Lloyd Lochridge and Joe M. Kilgore, McGinnis, Lochridge & Kilgore, Austin, Tex., for defendants-intervenors, Norment Foley and Gene Ilse.

Before GEE, Circuit Judge, and SPEARS and WOOD, District Judges.

MEMORANDUM OPINION AND ORDER

JOHN H. WOOD, Jr., District Judge.

This is a Voting Rights Act case involving the 1973 reapportionment of Uvalde County, Texas' Commissioners Court Pre-

cincts. Private Plaintiffs brought this action on or about October 18, 1976 seeking a declaration that the Defendant County Officials had failed to secure the approval of the Attorney General or the District Court for the District of Columbia for their 1973 reapportionment and for injunctive relief preventing the continued implementation of that reapportionment plan. A single judge of this Court denied the Plaintiffs' request for an order enjoining the election of the Commissioners, but, following the election, the Defendant County Officials were ordered not to canvass and certify the results of the election. Thus, the two individuals who were unopposed and therefore presumably elected in the November, 1976 election for County Commissioners have not taken office and the two Commissioners sitting prior to the November election have held over in office.

The United States has intervened in this action as a Plaintiff. The two persons elected in the November, 1976 election for County Commissioners but not allowed to take office have intervened on the side of Defendants.

On April 11, 1978, trial on the merits was had before this Court at which time all parties presented testimony, evidence and argument. Having now heard and considered same, the Court enters this Memorandum Opinion and Order constituting its findings of fact and conclusions of law.

■ Uvalde County reapportioned its Commissioners Court Precincts after November 1, 1972. That reapportionment was submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. Private Plaintiffs and the United States contend that we need only note that the Attorney General has entered an objection to the reapportionment and on that basis grant them the declaratory and injunctive relief they seek. Given the facts surrounding the issuance of the objection letter in this case, the issue is not as simple as Plaintiffs would have it. Coming to Court "armed" with an objection letter does not necessarily entitle Plaintiffs to the relief they seek. *Morris v. Gressette,* 432 U.S. 491, 97 S.Ct. 2411, 53 L.Ed.2d 506 (1977). This Court can review the circumstances in which the objection letter was issued in order to determine whether it was validly and timely issued. *Morris v. Gressette, supra; Georgia v. United States,* 411 U.S. 526, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1973). An extensive review of the facts is appropriate.

In August of 1973, the Commissioners Court of Uvalde County gave final approval of a plan to change the boundaries of the four precincts from which its members are elected.[1] Prior to that change the County was seriously malapportioned. In Texas, two Commissioners are elected every two years for four years terms and in November, 1974, the two Commissioners elected in Uvalde County were elected pursuant to the 1973 reapportionment scheme.[2]

In September, 1975, Texas was for the first time brought within the coverage of the Voting Rights Act, 42 U.S.C. § 1973, *et seq.* See *Briscoe v. Bell,* 432 U.S. 404, 97 S.Ct. 2428, 53 L.Ed.2d 439 (1977). According to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, a local political subdivision or state that is covered by the Act may not enforce a post-November 1, 1972 change affecting voting until the change is approved by the District Court in the District of Columbia or is not objected to by the Attorney General after its submission to him. It is conceded by all parties that the reapportionment here was the kind of change affecting voting that requires Section 5 approval.

Rather than bring suit in the District of Columbia, Uvalde County chose to submit its 1973 reapportionment to the Attorney General for his determination of whether the reapportionment had the purpose or effect of discriminating on the basis of race

---

1. This 1973 boundary change will be referred to as the "plan" or the "1973 reapportionment".

2. One of those Commissioners, Mr. Gilbert Torres, was originally a Party Defendant in this cause but, upon his own motion, was realigned as a Party Plaintiff.

or language status. See 42 U.S.C. § 1973c; *Beer v. United States,* 425 U.S. 130, 96 S.Ct. 1357, 47 L.Ed.2d 629 (1976); *City of Richmond v. United States,* 422 U.S. 358, 95 S.Ct. 2296, 45 L.Ed.2d 245 (1975).

On March 22, 1976, Uvalde County commenced what was to become an almost seven month submission process. On that date, the County Judge submitted the 1973 reapportionment to the Attorney General's Civil Rights Division.[3] Along with his letter explaining the reasons for, the circumstances surrounding and the results of the 1973 reapportionment, the County Judge sent newspaper clippings describing the changes in precinct boundaries, copies of letters to and from various persons interested in the reapportionment and voting statistics illustrating the effects of the changes.[4]

None of the parties seriously contend that this March submission ("initial submission") did not provide at least some of the items that the regulations state each submission "shall" include. 28 C.F.R. § 51.10(a)(1)–(5). However, the regulations also require a submission to include "other information which the Attorney General determines is required to enable him to evaluate the purpose or effect of the change." 28 C.F.R. § 51.10(a)(6).

Some 58 days later, on May 19, 1976, a letter was sent from the Attorney General's office to the County Judge advising him that the initial submission had been received but that more information was needed in order to evaluate the submission. The County Judge was further advised that the sixty day period allowed the Attorney General by Section 5 of the Voting Rights Act to consider a submission would not commence until the additional information was received. In this May 19, 1976 letter the Attorney General's office requested information concerning the total population and registered voters by race for each of the Commissioners Precincts both before and

after the adoption of the 1973 reapportionment. The County was further advised that if exact statistics were not available estimates should be provided. The County was also requested to supply the Attorney General's office with a map of the County showing the boundaries of the precincts both before and after the reapportionment and was requested to indicate on the map or on a separate map the geographic areas of the County inhabited primarily by persons of Spanish heritage.[5]

On May 28, 1976, the County Judge responded to the Attorney General's first request for additional information letter referred to above. In this letter, the County Judge responded to each of the requests made by the Attorney General in his additional information letter. First, the County Judge attached to the letter a chart showing the number of registered voters by race and ethnicity for each precinct before and after the reapportionment. Second, he included maps of the City and of the County of Uvalde showing the precinct boundaries and he described in his letter the areas in which the Mexican-American population tended to concentrate. However, with respect to the Attorney General's request for exact population figures or estimates of total population, as opposed to the number of registered voters, in each precinct, the County Judge made the following statement:

"We do not have any way of telling the total population of these districts before and after this change was made."

Such a statement on behalf of the submitting authority was not only appropriate but required by the regulations of the Attorney General. 28 C.F.R. § 51.10(b)(8).

Thus, as of June 1, 1976, the date on which the County Judge's May 28, 1976 letter with enclosures responding to the Attorney General's first request for additional information letter was received, Uvalde

---

3. The submission was received in the Attorney General's office on March 25, 1976.

4. See the dates and exhibits referred to in the Stipulated Facts section of the Pre-Trial Order.

5. This May 19, 1976 letter will be sometimes referred to as the first request for additional information letter.

County had (1) made the initial submission of the 1973 reapportionment and (2) supplied the Attorney General with all of the information he had requested that was available to the County.

Uvalde County contends that the sixty day period in which the Attorney General had to decide whether or not to object to the submitted reapportionment started on the date the Attorney General's office received the May 28, 1976 letter. Private Plaintiffs and the United States, on the other hand, argue that the sixty day period did not commence at that time because the submission was still incomplete.

On July 30, 1976 the Attorney General's office again advised the Uvalde County Judge that more information was needed to evaluate the submission. In this second request for additional information letter the Attorney General's office requested information that had not been theretofore requested.[6] Inexplicably, the County Judge was also asked again to supply the Attorney General's office with population figures by race for each Commissioner Precinct before and after the 1973 reapportionment. The County Judge had already stated, as he was required to do by the regulations, that this information was unavailable.

On August 12, 1976, the County Judge responded to the Attorney General's second request for additional information letter by providing the Attorney General's office with the available requested information. Concerning the request for population figures by race by precinct, the County Judge once again advised the Attorney General's office that the information was simply not available. Thereafter, on October 13, 1976, about 205 days after the submission process started, the Assistant Attorney General for the Civil Rights Division of the Department of Justice interposed an objection to Uvalde County's 1973 reapportionment.

Private Plaintiffs and the United States, on whom the burden of proof lies, contend that this October 13 objection was timely

and, therefore, they should be granted the declaratory and injunctive relief they seek. Relying on *Georgia v. United States,* 411 U.S. 526, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1973), they contend that the Attorney General has "carte blanche" authority to make as many requests for additional information, each time postponing the commencement of the sixty day period, as he deems appropriate. The Defendants, on the other hand, while not strenuously denying the Attorney General the right to make more than one request for additional information, argue that he cannot use the additional information request procedure to postpone more than once the commencement of the sixty day period. Based on the factual circumstances here, we agree with the Defendants.

As mentioned above, the Attorney General has promulgated regulations establishing procedures for the administration of Section 5 of the Voting Rights Act. 28 C.F.R. § 51. Although Section 5 of the Voting Rights Act makes no provision for requests for additional information postponing the start of the sixty day period, the regulations do allow this procedure. 28 C.F.R. § 51.18. There it is provided as follows:

"If the submission does not satisfy the requirements of § 51.10(a), the Attorney General shall request such further information as it necessary from the submitting authority and advise the submitting authority that the sixty day period will not commence until such information is received by the Department of Justice. The request shall be made as promptly as possible after receipt of the original inadequate submission." 28 C.F.R. § 51.18(a).

This subsection of the regulations has been upheld as reasonable and valid. *Georgia v. United States, supra.*

■ Nevertheless, the regulations do not allow repeated requests for additional information to continue postponing the start of the sixty day period once the originally requested information is received. That

---

**6.** Because the Attorney General's office was being inundated with submissions during this period, the Uvalde County submission was re- assigned in mid course from its original analyst to one who had more experience in Texas reapportionment submissions.

part of the regulation quoted above makes it clear that when "such information" as is requested is received by the Department of Justice, the sixty day period will commence. Nowhere is it provided that the Attorney General can thereafter request still more information and again postpone the start of the sixty day period. The regulations refer to "the request". This wording is evidence that those drafting the regulations intended that there be only one such request allowing the postponement of the sixty day period.

We think this construction of the regulations is the better one for another reason. The regulations as so read will not tie the hands of the Attorney General during the submission process. He may still request additional information from the submitting authority "at any time *during* the sixty day period". 28 C.F.R. § 51.18(b)(1) (emphasis added). Thus, he can obtain any extra data or clarification he wants while not unduly lengthening the submission process.

At the hearing of this cause, counsel for the United States argued that the Attorney General should have the right to continue to postpone the start of the sixty day period by requesting additional information as long as it appears that such requests might be fruitful. We do not believe that Congress, by providing in Section 5 of the Voting Rights Act that the Attorney General should make his determination within sixty days of the submission, intended to give the Attorney General such carte blanche authority. The congressional intent was assessed recently by the Supreme Court in the following manner:

"In light of the potential severity of the § 5 remedy, the statutory language, and the legislative history, we think it clear that Congress intended to provide covered jurisdictions with an expeditious alternative to declaratory judgment actions. The congressional intent is plain: the extraordinary remedy of postponing the implementation of validly enacted state legislation was to come to an end when the Attorney General failed to interpose a timely objection based on a complete sub-

mission. Although there was to be no bar to subsequent constitutional challenges to the implemented legislation, there also was to be 'no dragging out' of the extraordinary federal remedy beyond the period specified in the statute." *Morris v. Gressette,* 432 U.S. 491, 97 S.Ct. 2411, 2420, 53 L.Ed.2d 506 (1977).

As mentioned previously, the submission process in the case now before us was "dragged" out by the Attorney General's office over a 205 day period by the employment of the "request for additional information" procedure. As is evident here, this procedure does not result in the "expeditious" remedy intended by Congress.

Our interpretation of the regulations as not allowing serial requests for additional information to continue postponing the start of the sixty day period does not conflict with the decision of the Supreme Court in *Georgia v. United States, supra.* In *Georgia,* as previously stated, the Court upheld, under the circumstances presented there, the basic validity of the regulation allowing the Attorney General to postpone the start of the sixty day period until a complete submission was received. The Court stated that if the Attorney General is not allowed to request additional information he would often be compelled to make his statutory determination on the basis of incomplete and inadequate information. This result, the Court stated, would only add acrimony to the administration of the submission process.

In that case, however, there was only one request for additional information and that request was made within two weeks after the initial submission was received. Here, on the other hand, there were two requests for additional information and each request was made close to the sixtieth day after the receipt of prior correspondence. The request for additional information procedure is designed to avoid acrimony. If allowed to be used in the way it was used here, it would add acrimony. Once the submitting authority complies with the Attorney General's request for additional information the sixty day period commences. The Attorney

General may not further postpone the commencement of that period by requesting still more information or by repeating his request for information which the submitting authority has already stated to be unavailable.

■ Applying this principle to the case before us we find that the sixty day period commenced on the date that the Attorney General's office received Uvalde County's response to the first request for additional information letter, June 1, 1976. By that date, the Attorney General had been supplied the information he requested in his May 19, 1976 letter except for the population (as opposed to registered voters) information which the County Judge stated was not available. The submission was, therefore, according to the regulations, complete. Since the Attorney General failed to interpose an objection to the 1973 reapportionment within sixty days following June 1, 1976, that reapportionment scheme may be enforced by Uvalde County. The injunctive order heretofore in effect is hereby dissolved and all relief sought by Private Plaintiffs and by the United States is denied. The complaints are dismissed.

It is so ORDERED.

SPEARS, District Judge, dissenting:

Although the majority says that this Court can review the circumstances in which the objection letter was issued in order to determine whether or not it was valid and timely (P. 102), this proposition of law is not free from doubt. See *Morris v. Gressette,* 432 U.S. 491, 501, 97 S.Ct. 2411, 53 L.Ed.2d 506; and *Georgia v. United States,* 411 U.S. 526, footnote 13, p. 541, 93 S.Ct. 1702, 36 L.Ed.2d 472. Nevertheless, for the purpose of this dissent it will be assumed, but not admitted, that the majority is correct.

While the "seven month submission process" discussed by the majority troubles me considerably, I cannot, in light of the record herein, attribute all of this inordinate delay to the Attorney General. On the contrary, a substantial amount of the blame for the "dragging out" of the process must be

shared by the County, and since I am convinced that the July 30, 1976 letter written by the Attorney General to the submitting authority was both appropriate and timely under the circumstances, I must respectfully dissent.

The threshold problem presented by the majority is that of interpreting the regulations published by the Attorney General, 28 C.F.R. § 51.01 et seq., which govern the submission of changes affecting voting to the Justice Department for preclearance. I agree that the spirit of the Act, and the regulations thereunder, call for a construction which would allow the Attorney General a period of sixty days following receipt of a submission to review the materials before him and determine from them that either (1) an objection is called for, (2) no objection is called for, or (3) no determination to make or withhold an objection is possible on the basis of the material submitted, and that additional information is needed from the submitting authority. Further, I agree that should the third alternative prove necessary, the Attorney General must request all material he needs within the initial sixty day period. He may make a series of requests, but all must be made within that time. He is then entitled to wait until all information so requested is received from the submitting authority before the sixty day period in which he must object begins to run.

Applying this construction to the case before us, one must begin with the initial submission by Uvalde County. The letter accompanying the submission, dated March 22, 1976, states that the committee charged with formulating a new redistricting plan "used the voter list, the census report, a spot map kept by the City of Uvalde showing the density of utility users and all other information they could receive." The text of the letter specifically states that the redistricting was not accomplished by a prior committee due to an objection lodged by Gilbert Torres, a plaintiff in the present suit, to the effect that census data was not considered in the first redistricting plan.

The initial submission letter was received by the Attorney General on March 25, 1976. Within sixty days thereafter, on May 19, 1976, the Attorney General sent a letter requesting additional information. Among the items requested in this letter was the following:

The total population and number of registered voters by race (white-Anglo, black and Spanish heritage) for each of the precincts in question before and after adoption of the changes. If exact statistics are not available, please provide your best estimates and advise us of the basis for such estimates.

In reply, the County Judge of Uvalde County sent his letter of May 28, 1976, in which he stated:

We do not have any way of telling the total population of these districts before and after this change was made. We do have, and I am enclosing herewith, a list showing the persons by voter registration.

The next communication between the parties was the July 30, 1976 letter from the Attorney General to the County Judge, wherein the following information was requested:

Estimates of the total population by race (White-Anglo, Mexican American, and Black) in Uvalde County, as well as population totals by race for each of the Commissioner precincts before and after adoption of the changes. Please indicate the basis for your estimates. In this regard, *your correspondence indicates that in the reapportionment voter registration data as well as population data were taken into account.* Furthermore, the Redistricting Committee, appointed by the Uvalde County Commissioner's [sic] Court, in their report, *indicates that 1970 census tabulations as well as a population density map for the City of Uvalde was available for their consideration. Please advise us of the specific data utilized in your determination.* (Emphasis supplied).

At first glance, the July 30 request seems repetitious of the one made in the May 19 letter, to which the County responded that the information sought was simply unavailable. However, if reference is made to the original submission letter and the attachments thereto, it appears that the 1970 census report was in fact used by the Redistricting Committee in its formulation of a plan. The original submission fails to specify what census information was used or how it was used, and it seems to me that the repeated requests of the Attorney General are directed at this point, as indicated by the wording of the July 30 request, and the deposition testimony of Robert Chavez, a Department of Justice analyst (Chavez, p. 22, first question—p. 23, third question).

In evaluating a situation such as this, the good faith of the Attorney General and his delegates must be presumed, and inasmuch as the defendants are affirmatively attacking the administration of the Attorney General's procedures, it would appear that it is incumbent upon them to show "unwarranted administrative conduct" resulting in "frivolous and repeated delays by the Justice Department." *Georgia v. United States,* 411 U.S. 526, footnote 13, p. 541, 93 S.Ct. 1702, 1711, 36 L.Ed.2d 472.[1]

I do not believe that the record supports a finding of any such conduct on the part of the Justice Department in this case. As I see it, the Attorney General acted reasonably in writing the July 30th letter, given the apparent conflict in the information supplied by the submitting authority. The regulations emphasize the value of population statistics in the evaluation of changes in voting practices or procedures which involve redistricting. 28 CFR § 51.10(b)(5) and (6). The requests for such information are certainly supportive of the argument that the Attorney General's office was searching for a basis upon which it might sustain the Uvalde County reapportionment. Each letter requesting additional in-

1. But even if, as the majority says, the burden of proof to show that the October 13 objection was timely lies upon the plaintiffs, the record, as I read it, reflects that such burden has been fully satisfied.

formation contains an offer to aid the submitting authority in complying therewith, an offer the benefits of which the submitting authority in this case failed to avail itself.

The County's letter of May 28, 1976 was received by the Attorney General on June 1, 1976, so the July 30th letter from the Attorney General was timely. The time-table of events demonstrates that on August 12, 1976, the County responded to the Attorney General's letter of July 30, 1976. This response was received by the Attorney General on August 14, 1976, and he registered his objection within sixty days thereafter, on October 13, 1976. I would, therefore, continue in force the injunctive relief heretofore granted, and extend that relief to cover the May 6, 1978 party primaries.

## AMENDED ORDER

Came on for consideration by this Court the Motion made by Plaintiffs, Richard Garcia, et al., that the Court reconsider its April 20, 1978 Memorandum Opinion and Order and its April 27, 1978 Judgment, and, came on for consideration by this Court the Motion made by the United States of America, Plaintiff-Intervenor, that this Court reconsider and amend its April 27, 1978 Judgment. After considering these Motions and all pleadings, affidavits and memoranda in support thereof, the Court is of the opinion that these Motions should be, in all things, denied. It is therefore,

ORDERED, ADJUDGED and DECREED that the Motions of Plaintiffs and Plaintiff-Intervenor, hereinabove referred to, and the relief requested therein is hereby denied.

SPEARS, District Judge, dissenting:

Since there is no question but that Uvalde County is covered by § 5 of the Voting Rights Act, and that said county has been subjected to the required federal scrutiny,[1] I do not believe that this Court has jurisdiction to determine whether or not the objection letter was timely filed by the Attorney General; nevertheless, even if this Court does have jurisdiction to determine the timeliness of the Attorney General's objection, I am of the opinion that he acted within the time limits allowed him by the Act. As a consequence, I would grant the motions for reconsideration without regard to the additional grounds set forth therein.

---

1. See dissent filed April 20, 1978, page 106. Also see *Perkins v. Matthews*, 400 U.S. 379, 383, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971).