Earl LUCAS, Ira M. Gray, Ora Martin Butler, Arthur Holmes, Jr., on Behalf of Themselves and all Others Similarly Situated, Plaintiffs,

v.

BOLIVAR COUNTY, MISSISSIPPI, the Bolivar County Board of Supervisors, J.E. Bobo, Raymond S. Barr, Kermit Stanton, Tommy Narron and Victor Baioni, Supervisors, Defendants.

Civ. A. No. DC 83–136–WK–O.

United States District Court,
N.D. Mississippi,
Delta Division.

July 21, 1983.

Charles Victor McTeer, Greenville, Miss., Thomas Morris, Cleveland, Miss., Johnnie E. Walls, Jr., Greenville, Miss., for plaintiffs.

Benjamin E. Griffith, Cleveland, Miss., for defendants.

Paul F. Hancock, Ellen M. Weber, Thomas G. Snow, Voting Section, Civ. Rights Div., U.S. Dept. of Justice, Washington, D.C., for amicus curiae.

Before CLARK, Chief Circuit Judge, and SENTER and KEADY, District Judges.

## MEMORANDUM OPINION

KEADY, District Judge.

In this civil rights action, plaintiffs, Earl Lucas, Ira M. Gray, Ora Martin Butler, and Arthur Holmes, Jr., on behalf of themselves and a class of black residents, citizens and electors of Bolivar County, Mississippi, sue defendants, Bolivar County, the County Board of Supervisors, and its members, for declaratory and injunctive relief under the Voting Rights Act of 1965, 42 U.S.C. § 1973, *et seq.;* 42 U.S.C. §§ 1981 and 1983; and the Thirteenth, Fourteenth and Fifteenth Amendments. A three-judge court was organized pursuant to law. At a

status conference held July 15, 1983, plaintiffs' action was conditionally certified as a Rule 23(b)(2) class action, and the United States was admitted as amicus curiae with respect to the Section 5 issues raised in the pleadings.

An evidentiary hearing has been held on plaintiffs' motion to enjoin the enforcement of the County's proposed 1983 supervisor redistricting plan on the ground that it was not precleared in accordance with Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c.

## I. *Facts*

Many facts have been stipulated by the parties. On January 20, 1983, the County made its original submission of the proposed redistricting plan to Section 5 Unit, the Voting Section, Civil Rights Division of the United States Department of Justice, at Washington, D.C. On March 21, still within the sixty-day period for objection,[1] Assistant Attorney General, William Bradford Reynolds, mailed a letter to defendants' counsel, Benjamin E. Griffith, advising that the information provided in the initial submission was insufficient to enable the Attorney General to determine whether the proposed change had the purpose or would have the effect of denying or abridging the right of qualified electors to vote on account of race. This communication also requested additional specific information which the Attorney General deemed necessary to enable him to make such an evaluation. Responding to this request, Attorney Griffith submitted additional data which the Attorney General received on April 1 and April 5.

Shortly thereafter, defendants' counsel requested the Attorney General to send him a copy of comments received from interested persons relating to Bolivar County's submission. On April 13, Carl W. Gabel, Director of the Section 5 Unit, forwarded the comments to Griffith and confirmed that a meeting with him was scheduled for April 21 at the Department of Justice in Washington, D.C. At that meeting between Griffith and two Section 5 Unit attorneys, Sandra Coleman and Thomas Snow, Griffith hand-delivered his own affidavit to the Section 5 Unit representatives. Griffith's affidavit and his oral presentation were tendered to refute the allegations of racial discrimination, political and economic intimidation of blacks, and a discriminatory purpose and effect in the proposed reapportionment plan appearing in a comment from Louis Armstrong, which was filed with the Attorney General on behalf of certain black Bolivar County citizens. The Armstrong comment specifically alleged, *inter alia,* that Griffith had informed Armstrong that the board of supervisors would never accept a redistricting plan proposed by the Mississippi Rural Legal Services coalition [hereinafter referred to as MLSC] since it would create the possibility of black control of the five-member board of supervisors.

On April 26, Griffith, as defendants' counsel, submitted additional information to the Attorney General, which was received by him on April 29. Undisputedly, this information was submitted by Griffith voluntarily and without request from the Attorney General's office.[2] The documents

---

1. Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c, provides for preclearance of any change affecting voting by submitting the change to the Attorney General of the United States. If the Attorney General fails to interpose an objection within 60 days, the change is precleared. That sixty-day period is computed as "60 calendar days with the day of receipt of the submission not counted." 28 C.F.R. § 51.8 (1982). If the Attorney General requires additional information, he may request such further information from the submitting authority, but he must do so no later than the 60th day following receipt of the original submission. 28 C.F.R. § 51.35(a). Thus,

the Attorney General's request was timely, and defendants do not contend to the contrary.

2. Griffith's cover letter to the April 21 submission begins:
   Re: File No. G7990, Submission of Bolivar County, Mississippi, Under § 5
   Thank you for providing me with the opportunity to provide a response on behalf of Bolivar County to the objections of Mississippi Legal Services coalition, which objections were set forth in Mr. Louis Armstrong's letter of March 4, 1983.
   I advised you that I would provide you data on the Boyle, Mississippi, housing project,

and information contained in Griffith's affidavit and April 21 submission denied in specific detail the allegations contained in the Armstrong objection with respect to the discriminatory purpose and effect of the Bolivar County redistricting plan.

On June 13, following review of all documents submitted in support of the proposed redistricting plan, Assistant Attorney General Reynolds, acting on behalf of the Attorney General, interposed a formal objection to the plan. The single issue presently before our court is whether the sixty-day period began anew with the County's voluntary submission of additional information received April 29 and thereby made the Attorney General's objection timely, or whether his action was tardy, thus resulting in preclearance of the plan. We, of course, have no authority to review the merits of an objection made by the Attorney General. *See Morris v. Gressette,* 432 U.S. 491, 507, 97 S.Ct. 2411, 2421, 53 L.Ed.2d 506, 520 (1977) (exercise of Attorney General's discretion under § 5 not judicially reviewable).

## II. *Law*

It is well-settled by statute and case law that the Attorney General must interpose an objection to a voting change within sixty days of a complete submission. 42 U.S.C. § 1973c; *City of Rome v. United States,* 446 U.S. 156, 64 L.Ed.2d 119, 64 L.Ed.2d 119 (1980); *Georgia v. United States,* 411 U.S. 526, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1972). The date on which the sixty-day period begins to run, however, has been a recurrent subject of litigation. In the instant action, we must determine whether the sixty-day period begins anew from the voluntary filing by the County of supplementary information.

economic and employment data relative to Bolivar County and court records concerning a 1979 incident referred to on page 2 of Mr. Armstrong's March 4, 1983 letter. Exhibit I at 1.

**3.** Defendants contend this case is controlled by *Garcia v. Uvalde County,* 455 F.Supp. 101 (W.D.Tex.1978), *aff'd.* 439 U.S. 1059, 99 S.Ct. 822, 59 L.Ed.2d 26 (1979), which held that the Attorney General could request additional information only once, and that the 60-day period

28 C.F.R. § 51.37 (1982) provides in pertinent part:

When a submitting authority provides documents and information *materially supplementing* a submission, ... the 60-day period for the original submission will be calculated from the receipt of the supplemental information.... (emphasis added)

*Id.* Since defendants agree section 51.37 controls the preclearance issue in this case and since they do not challenge the regulation's validity, the Court is of the opinion that an interpretation of section 51.37 as it applies to the facts of this case will be dispositive of the Section 5 issue.[3]

Section 51.37, in its present form, was codified on January 5, 1981, and, as acknowledged by defendants, was part of an attempt by the Department of Justice to amend Section 5's administrative procedures in an effort to interpret the Supreme Court's opinion in *City of Rome v. United States, supra.* It was the purpose of the regulation to

clarify the procedure to be followed when insufficient information is provided to enable the Attorney General to make a determination, ... explain the practice of the Attorney General when a submitting authority materially supplements a pending submission or makes a second related submission....

45 Fed.Reg. 18,890 (1980). The Attorney General's policy, as reflected in the regulation, serves the public interest by reducing the potential for acrimony between his office and the covered jurisdiction in resolving what may often be difficult and complex questions affecting voting. In light of the new language of section 51.37 and the expressed intent of the Attorney General

began upon receipt of the information submitted in response to the first of such requests. This court is of the view, however, that the *Garcia* court was not presented with the issue in the case *sub judice.* Unlike *Garcia,* the Attorney General in this action made only *one* request for additional information. The second additional set of documents was voluntarily submitted at the County's own request. Thus, *Garcia* is clearly distinguishable on its facts.

for revising the regulation, it is clear that the sixty-day period begins anew when a submitting authority provides information "materially supplementing a submission." Thus, we must next decide whether the documents presented by defendants' counsel and received by the Attorney General on April 29 materially supplemented the County's submission.

### III. *Analysis*

Our analysis with respect to material supplementation entails two questions. First, we must determine whether the April 29 documentation was additional or new information—and not mere duplication—as compared to the information in the Attorney General's possession following receipt of the earlier April 1 and April 5 submissions. Second, we must determine whether the County's April 29 information was material to the Attorney General's decision to interpose an objection. We answer both questions in the affirmative.

### A. *New Information*

■ From the stipulated record, it is manifest that information responding to certain factual issues contained in the Armstrong letters had not been provided to the Attorney General prior to the April 21 meeting and Griffith's April 29 submission. Armstrong's letters contained, *inter alia,* allegations that public housing segregation, economic repression, and economic and political intimidation of blacks could all be found in Bolivar County. In addition, it was charged that the redistricting plan had a discriminatory purpose and would have a discriminatory effect as evidenced by the members of each race included within the redrawn districts and the alleged remarks attributed to Griffith claimed to be indicative of the county supervisors' intent to preclude black control of the board. The letters also alleged that the Mayor of the Town of Shaw in Bolivar County had been arrested for refusing to allow other persons at the polls on an election day to violate the Voting Rights Act.

The data submitted by Bolivar County in response to such allegations provided the Attorney General with specific information concerning an application for public housing by the Town of Shaw, statistical data on the racial makeup of the County's work force and the case history of the arrest, indictment and dismissal of charges against Shaw's mayor. This information was not contained in any submission by Bolivar County prior to the April 29 submission. It is, therefore, inescapable that the April 29 submission contained substantial new or additional information.

### B. *Attorney General's Decision*

■ Although defendants contend the April 29 submission was merely responsive but otherwise immaterial to, unrelated to, and separate from any issues which were, or should be, considered for preclearance, we are convinced the information went to the heart of the Attorney General's decision-making process. The Voting Rights Act requires the Attorney General to interpose an objection to a change affecting voting if that change has the purpose or would have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority. 42 U.S.C. § 1973c. Defendants argue that since the County's April 26 voluntary submission was not included in the weekly notices of the Attorney General to registered individuals and groups pursuant to § 51.31, this omission should be probative as to lack of materiality. We disagree, believing that the Attorney General's failure to give such notice, if required by the regulation, does not bind us to decide that its omission rendered the submission immaterial.

It is patent from the record that the Attorney General took into consideration the issues and evidence brought to light through the Armstrong letters and defendants' responses thereto. The letter from Assistant Attorney General Reynolds interposing an objection to the apportionment plan itself stated that the April 29, 1983, documents completed the submission. Exhibit K at 1. In explaining the basis for his decision, Reynolds made explicit reference to the motivation of the county board in

summarily rejecting the MLSC redistricting plan—an issue very hotly debated in the Armstrong letters and the County's responses. The Attorney General's interpretations of the Voting Rights Act and regulations promulgated pursuant thereto are to be given "great deference" by the courts. *United States v. Board of Commissioners of Sheffield, Alabama,* 435 U.S. 110, 131, 98 S.Ct. 965, 979, 55 L.Ed.2d 148, 166 (1977). Thus, the Court is obliged to weigh heavily the testimony of Sandra Coleman, Deputy Director of the Section 5 Unit, that the Attorney General's office considered the April 29 submission to be material to the determination of whether to object to the plan.

It is unnecessary for us to agree or disagree with the Attorney General's argument that his determination as to the materiality of supplementary submissions is judicially unreviewable since we conclude that the April 29 submission was in fact quite material to the decision to interpose an objection to the redistricting plan.

### IV. *Conclusion*

Because we find that it was both additional to the then existing file and material to the Attorney General's decision-making process, we hold that the April 29 documents and information materially supplemented Bolivar County's submission, and that the sixty-day period for the original submission must be calculated from the day of receipt of the supplementary material. Using that date, the Attorney General had until June 28 to interpose an objection. Since the objection was entered June 13, 1983, it was timely and the County's proposed 1983 supervisor redistricting plan may not be enforced.

Let an order issue accordingly.

### ORDER

Upon the convening of the three-judge court herein and it appearing from the record that the proposed supervisors redistricting plan of Bolivar County, Mississippi, submitted to the Attorney General of the United States on January 20, 1983, constitutes a change affecting voting and voting proce-

dures and that such plan was timely rejected by the Attorney General of the United States on June 13, 1983, and that the proposed supervisors redistricting plan cannot be implemented or put into effect until it is precleared in accordance with Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c;

For the reasons stated in the Memorandum Opinion of Judge Keady of this date, it is, therefore

### ORDERED

That Bolivar County, Mississippi, The Bolivar County Board of Supervisors, J.E. Bobo, Raymond S. Barr, Kermit Stanton, Tommy Narron and Victor Baioni, their agents, representatives, attorneys, election commissioners, political party committees and all persons acting in concert therewith be, and they hereby are, enjoined from utilizing the proposed supervisors redistricting plan of Bolivar County, Mississippi, for the holding of any election including the election of supervisors and constables until such plan is precleared in accordance with Section 5 of the Voting Rights Act of 1965 by either obtaining a declaratory judgment in the United States District Court for the District of Columbia or the approval of the Attorney General of the United States that such plan does not, in purpose or effect, discriminate on account of race against the black residents, citizens and electors of Bolivar County.

All other issues in this case are remanded to the managing judge for resolution as a single judge district court.